# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EDWARD RAVENELL, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. ELH-13-203 |
| CORIZON MEDICAL SERVICES, et al. | * | |
| Defendants | * | |

***

## MEMORANDUM

Self-represented plaintiff Edward Ravenell, a Maryland prisoner now incarcerated at Eastern Correctional Institution ("ECI") in Westover, Maryland, filed suit in regard to the alleged inadequacy of medical treatment he received following surgery in 2010. Pursuant to 42 U.S.C. § 1983, he asserts claims under the Eighth and Fourteenth Amendments to the Constitution.

Plaintiff has filed a motion to appoint counsel. ECF 20. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1), is a discretionary one, and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *see also, Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). The question of whether such circumstances exist in a particular case hinges on the characteristics of the claim and the litigant. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). When a colorable claim exists but the litigant has no capacity to present it, counsel should be appointed. *Id*. Upon careful consideration of the motions and previous filings by plaintiff, the court finds that he has demonstrated the wherewithal either to articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so. The issues pending before the court

are not unduly complicated. Therefore, there are no exceptional circumstances that would warrant the appointment of an attorney to represent plaintiff under §1915(e)(1).

One of the defendants, Wexford Health Sources, Inc. ("Wexford"), has filed a motion to dismiss or, in the alternative, for summary judgment ("Motion"), ECF 12, supported by an Affidavit. Plaintiff opposes the motion. ECF 18 & 21. No hearing is necessary to resolve the Motion. *See* Local Rule 105.6 (D. Md. 2011). For the reasons that follow, Wexford's Motion, construed as a motion for summary judgment, shall be granted.

## Factual Background

Plaintiff alleges that on July 23, 2010, he underwent surgery at the University of Maryland Hospital for an anal fistula. On that same date, he was transferred to the Maryland Transition Center ("MTC") where he advised Nurse William Amponsah that he was in pain. The nurse told Ravenell that analgesic pain medication had been prescribed by the surgeon and he would receive it that night. Ravenell was further advised that medical staff at Jessup Correctional Institution ("JCI") were fully advised of his condition and medical orders and would provide the prescribed medical treatment. ECF 1.

Ravenell returned to JCI that evening. As he was being taken to his cell, he asked Tier Officer Bashire, a CO II, when pill call would occur and asked that he be assigned to another cell as he was not able to get onto the top bunk. Ravenell indicates that the cell in which he was initially to be placed was so filthy that Bashire took him to another cell, which was not much better. ECF No. 1. Ravenell states he subsequently requested cleaning materials and his medication from Bashire, who advised Ravenell that he (Ravenell) could not clean his cell and indicated he would convey the request for pain medication to the nurse. Thereafter, Sgt. Garnett came to Ravenell's cell, and Ravenell again requested his medication. Garnett inquired as to the

2

nature of Ravenell's surgery. When Ravenell responded, Garnett made a joke about the nature of the surgery. Ravenell states that he remained in pain and the nurse never visited. He asserts that he was not seen by medical staff until approximately 4:15 a.m., when he again advised he was in "extreme pain," without his prescribed medication, and complained that his dressing had not been changed. Ravenell claims that the unidentified nurse responded: "[W]e don't give out medicine that other jails prescribe." The staff also said: "[W]e don't care what doctor order it, or why." ECF 1 at 3. According to Ravenell, the nurse told him the only way for him to obtain medication and a dressing change was to see the physician's assistant, and if he were lucky that might occur sometime later that week.

According to Ravenell, he was left without pain medication or a dressing change for three days. Ravenell names as defendants Nurse John Doe; Sgt. Garnett;[1] Wexford Health Sources, Inc.; Corizon Medical Services, f/k/a Correctional Medical Services; and Lynn Cole, the medical administrator at ECI.[2]

**Standard of Review**

Wexford's motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF 12. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil

---

[1] Sgt. Garnett has not been served with the complaint. In light of plaintiff's status as a self-represented, incarcerated litigant and the colorable claim he has stated, the court has an obligation to assist plaintiff in identifying the correct addresses of this defendant so that service of process may be effected. *See Gordon v. Leeke*, 574 F.2d 1147, 1152 (4th Cir.1980); *see also Donald v. Cook County Sheriff's Dep't.,* 95 F.3d 554-55 (7th Cir. 1996). The Assistant Attorney General shall be ordered to provide Garnett's last known home or business address solely for purposes of service of process, or provide a statement regarding why the addresses are not available. Given obvious confidentiality considerations, personal information regarding all home addresses shall immediately be placed under seal by the Clerk.

[2] The docket omits reference to Lynn Cole. The Clerk is directed to amend the docket to add Lynn Cole as a defendant and to add her to the caption.

3

Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger*, 510 F.3d at 450. However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not

consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont*, *supra*, 637 F.3d at 448-49. However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f))

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, 2011 U.S. Dist. LEXIS 14266, at *62 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637,

641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Plaintiff has not filed an affidavit under Rule 56(d). Moreover, I am satisfied that it is appropriate to address the defendant's motion as one for summary judgment. To do so will facilitate disposition of the case.

6

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. To defeat summary judgment, there must be a *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). Moreover, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

## Discussion

The Eighth Amendment to the Constitution prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (*citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure that the needed care was available. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839–40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot

be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995) (*quoting Farmer,* 511 U.S. at 844).

If the requisite subjective knowledge is established, a prison official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Under the Eighth Amendment, "[a] prison official's duty . . . is to ensure "'reasonable safety' . . ." (citation omitted). Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris,* 240 F. 3d 383, 390 (4th Cir. 2001) (*citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken)).

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference". *Johnson v. Quinones* 145 F. 3d 164, 166 (4th Cir. 1998). Without evidence that a doctor linked the presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id.* at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge). Mere disagreement with a prescribed course of treatment is insufficient to establish an Eighth Amendment claim of deliberate indifference. *See Russell v. Sheffer*, 528 F. 2d 318, 319 (4th Cir. 1975).

The law is well established that the doctrine of *respondeat superior* does not apply with respect to § 1983 claims. *See Monell v. New York Dep't of Social Services*, 436 U.S. 658, 691 (1978); *Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *see also Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory

9

indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984)).

To establish a claim for supervisory liability under § 1983, the claim must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

Prior to July 1, 2012, Wexford did not provide primary health care to inmates in the custody of the Maryland Department of Public Safety and Correctional Services ("DPSCS"), pursuant to a written contract beginning July 1, 2005. ECF 12, at p. 3-4 and Affidavit of Joseph Ebbitt, Wexford's Manager of Risk Management since May 2006. At the time of Ravenell's surgery and post-surgical care, Wexford solely provided onsite utilization review management services for off-site medical services, hospitalizations, and other specialized medical or clinical services provided to inmates. *Id.*

Ravenell's claims do not concern the recommendation of any specialty care. In fact, the specialty care Wexford would have been responsible for reviewing, the surgery, was provided to him. *Id.* Rather, Ravenell's claims focus on the delivery of health care services after his off-site surgical procedure. In his opposition, Ravenell asserts that Wexford is liable due to its contractual relationship with DPSCS. ECF 19. Ravenell's theory of liability for Wexford is one

of *respondeat superior* and, as discussed above, is insufficient to support an Eighth Amendment claim. Moreover, at the relevant time (2010), Wexford had no role in providing direct health care services to inmates. Therefore, Wexford is entitled to summary judgment in its favor.

## Conclusion

Wexford's dispositive motion will be granted. Plaintiff's request for appointment of counsel shall be denied. Lynn Cole shall be added to the docket as defendant. Counsel for the remaining defendants shall be directed to respond to the complaint and counsel for the office of the Attorney General shall provide further information regarding Sgt. Garnett. A separate Order follows.


February 5, 2014 /s/
Date                                                                                   Ellen L. Hollander
United States District Judge