## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| EDWARD RAVENELL, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. ELH-13-203 |
| CORIZON, INC., et al. | * | |
| Defendants | * | |
| | *** | |

### MEMORANDUM

Self-represented plaintiff Edward Ravenell, a Maryland prisoner incarcerated at Eastern Correctional Institution ("ECI"), has filed suit pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to serious medical needs, in violation of the Eighth and Fourteenth Amendments to the Constitution. ECF 1. Ravenell named as defendants Nurse John Doe; Lynn Cole, Sgt. Garnett; Wexford Health Sources, Inc.[1]; and Corizon Medical Services f/k/a Correctional Medical Services ("Corizon").[2]

Defendants Cole and Corizon have filed a motion to dismiss or, in the alternative, for summary judgment, ECF 35, along with a memorandum (ECF 35-1) (collectively, the "Motion"). The Motion is supported by Cole's Affidavit. ECF 35-2. Plaintiff opposes the motion, ECF 39, and has also filed an Affidavit. ECF 39-1.

No hearing is necessary to resolve this matter. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, defendants' Motion, construed as one for summary judgment, shall be granted.

---

[1] I previously granted Wexford Health Sources, Inc.'s dispositive motion. *See* ECF 12 (Motion); ECF 22 (Memorandum); ECF 23 (Order).

[2] Correctional Medical Service is now known as Corizon, Inc. *See* ECF 35 at 1 n.1. The docket has been corrected to reflect the proper name.

**Factual Background**

At the relevant time, Ravenell was a Maryland State prisoner in the custody of the Department of Public Safety and Correctional Services ("DPSCS"). ECF 35 at 3. On July 23, 2010, he underwent surgery for an anal fistula, performed at the University of Maryland Hospital by Dr. Steven Kavic. ECF 1; ECF 39-1. At that time, Corizon was the contractual medical provider for DPSCS. ECF 35 at 1; ECF 39 at 3. From 2007 to 2012, Cole served as the Regional Director of the Maryland Eastern Division of Corizon. ECF 35 at 2; ECF 35-2 ¶ 1. Her "areas of responsibility" were ECI, ECI Annex, and Poplar Hill Pre-Release. ECF 35-2 ¶ 1.

Plaintiff claims that, following surgery, defendants were ordered to follow the instructions of the surgeon, Dr. Kavic. ECF 1; ECF 39-1 ¶ 6. After surgery, Ravenell was transferred to the Maryland Transition Center ("MTC"), where he advised Nurse William Amponsah that he was in pain. ECF 1. The nurse told Ravenell that analgesic pain medication had been prescribed by the surgeon and he would receive it that night. Ravenell was further advised that medical staff at Jessup Correctional Institution ("JCI") were fully advised of his condition and medical orders and would provide the prescribed medical treatment. ECF 1 at 2.

Ravenell was returned to JCI that evening. As he was being taken to his cell, he asked Tier Officer CO Bashire when pill call would occur and asked that he be assigned to another cell, because he was not able to get onto the top bunk. *Id*. at 2. Ravenell indicates that the cell he was initially to be placed in was so filthy that Bashire took him to another cell, which "wasn't much better." *Id*. Plaintiff claims he subsequently requested cleaning materials and his medication from Bashire, who advised that he could not clean his cell but indicated he would convey the request for pain medication to the nurse. *Id*. at 3. Thereafter, Sgt. Garnett came to Ravenell's cell, and Ravenell again requested pain medication. *Id*.

Garnett inquired as to the nature of Ravenell's surgery. When Ravenell responded, Garnett made an inappropriate "joke." *Id*. Ravenell contends that he remained in severe pain and explained his circumstance to a nurse who came at 12:00 a.m. *Id*. From that point, Ravenell was not seen again by medical staff until approximately 4:15 a.m., when he again advised he was in extreme pain, without his prescribed medication, and complained that his dressing had not been changed. Ravenell states that an unidentified nurse responded: "We don't give out medicine that other jails prescribe." *Id*. She also said, *id*.: "We don't care what doctor ordered it or why[.]" *Id*. Ravenell claims that the nurse told him the only way for him to get pain medication and a dressing change was to see the physician's assistant, which could take a week, if he was "lucky." *Id*. Ravenell states he suffered in "excruciating pain and covered in the same blood soaked dressing" for three days, *id*. at 4, and "was forced to use toilet paper for dressing…." *Id*.

In the suit, Ravenell identified Cole as the "medical administrator at E.C.I." ECF 1 at 2. He alleged that Cole is "generally responsible for ensuring provisions of medical care to prisoners," including "scheduling medical appointments outside the prison when a prisoner need[s] specialized treatment." ECF 1 at 2.

In her Affidavit, Cole avers that her "position" with Corizon "was purely administrative…." ECF 35-2 ¶ 1. Moreover, she maintains that she never had responsibility for either JCI or MTC. *Id*. ¶ 2. Further, Cole asserts that, as Regional Director, she "did not at any time assess or treat patients, make or participate in treatment decisions, now was [she] involved in prescribing or administering medications." *Id*. ¶ 3. Nor did she make any policy by which medical providers "systemically deny" treatment to inmates. *Id*. ¶ 5. Ravenell has not offered any material to contradict Cole's assertions.

**Standard of Review**

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. ECF 35. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).[3]

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not

---

[3] In contrast, a court may not convert a motion to dismiss to one for summary judgment *sua sponte*, unless it gives notice to the parties that it will do so. *See Laughlin*, 149 F.3d at 261 (stating that a district court "clearly has an obligation to notify parties regarding any court-instituted changes" in the posture of a motion, including conversion under Rule 12(d)); *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk So. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials.").

consider it." 5C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id.* at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id.* at 165-67.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20, (D. Md. Feb. 14, 2011), *aff'd,* 707 F.3d 437 (4th Cir. 2013), *cert. granted*, ____ U.S. ____, 134 S. Ct. 2898 (2014)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011)

(alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir.), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods,* 302 F.3d at 244 (citations omitted). On the other hand, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted). According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted).

Although plaintiff has filed an affidavit, it is not made under Rule 56(d). Moreover, I am satisfied that it is appropriate to address the defendants' Motion as one for summary judgment,

because it will facilitate disposition of the case. As to the two movants, no material facts are in dispute.

Summary judgment is governed by Fed. R. Civ. P. 56(a). It provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." As the Fourth Circuit recently observed, Fed. R. Civ. P. 56 "is a mechanism to obviate trial . . . ." *Boyer-Liberto v. Fontainbleau Corp.*, 752 F.3d 350, 355 (2014), *rehearing en banc granted* (July 1, 2014).

The Supreme Court has clarified that not every factual dispute will defeat a summary judgment motion. By its very terms, the standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. *Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*. at 248.

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). Moreover, the court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Greater Baltimore Ctr. For Pregnancy Concerns, Inc. v. Mayor and City Council of Balt.*, 721 F.3d 264, 283 (4th Cir. 2013); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th

7

Cir. 2013). The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Similarly, the court may not make credibility determinations on summary judgment. *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006).

Generally, in the face of conflicting evidence, such as competing affidavits, summary judgment is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility. *See*, *e.g.*, *Boone v. Stallings*, ____ Fed. App'x. ____, No. 14-6521 (4th Cir. Sept. 11, 2014) (per curiam). However, to defeat summary judgment, conflicting evidence must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. Anderson, 477 U.S. at 248. On the other hand, a court must award summary judgment if the evidence "is so one-sided that one party must prevail as a matter of law." *Id.* at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

**Discussion**

**I.**

Plaintiff named Sgt. Garnett as a defendant. ECF 1. On February 5, 2014, I issued an Order that directed counsel for DPSCS to provide information regarding Sgt. Garnett so that the court could assist plaintiff in service of process. ECF 23. Counsel indicated there is no record of an officer by the last name Garnett who was employed by DPSCS at the time of the incident on July 23, 2010. ECF 27. The response was corroborated by the Declaration of Yvonne Harris, Assistant Director of Human Resources Services Division for DPSCS. *See* ECF 27-1. Thereafter, plaintiff was directed to provide additional identifying information regarding Sgt. Garnett. ECF 31. Plaintiff responded (ECF 32), providing a physical description of the officer but providing no alternative spellings of his name or any information which would assist the court or counsel for DPSCS in identifying Garnett in order to effect service of the complaint.

As Sgt. Garnett has not been identified, he has not been served with the complaint. Accordingly, plaintiff's complaint shall be dismissed, without prejudice, as to Garnett.[4]

Similarly, plaintiff has never identified "Nurse P.A.," another defendant. Therefore, the complaint shall also be dismissed as to the nurse, without prejudice.

**II.**

Section 1983 of 42 U.S.C. provides that "[e]very person" who, under color of state law, causes the violation of another's federal rights shall be liable to the party injured by his conduct. *See Owens v. Baltimore City State's Attorneys Office*, ____ F.3d ____, No. 12-2173, slip op. at 44 (4th Cir. Sept. 24, 2014). Section 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510

---

[4] On one occasion, plaintiff referred to Garrett, not Garnett. *See* ECF 39-1. I assume that plaintiff's lone reference to Garrett is a typographical error.

9

U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). A suit under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

To state a claim under § 1983, a plaintiff must allege that 1) a right secured by the Constitution or laws of the United States was violated, and 2) that the alleged violation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir.), *cert. denied*, ____ U.S. ____, 132 S. Ct. 112 (2011).

Plaintiff's claim is founded on the Eighth Amendment to the Constitution, which bars cruel and unusual punishment. By virtue of its guarantee against cruel and unusual punishment, the Eighth Amendment prohibits "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) (*citing Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

A prison official's deliberate indifference to an inmate's serious medical needs constitute cruel and unusual punishment. *Jackson v. Lightsey*, ____ F.3d ____, No. 13-7291, slip op. at 15 (4th Cir. Dec. 18, 2014); *see Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976). A "'serious . . . medical need'" is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison

staff were aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Danser v. Stansberry*, 772 F.3d 340, 347 (4th Cir. 2014).

The Fourth Circuit recently observed that "deliberate indifference is 'a very high standard,' *Grayson v. Reed*, 195 F.3d 692, 695 (4th Cir. 1999). It requires that a plaintiff introduce evidence suggesting that the prison official had actual knowledge of an excessive risk to the plaintiff's safety." *Danser*, 772 F.3d at 347 (*citing Farmer*, 511 U.S. at 837). Put another way, to establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson*, 501 U. S. at 298. Moreover, in a case alleging deliberate indifference to medical needs, the inmate must show a "significant injury." *Danser*, 772 F.3d at 346 n.8.

"True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter ... becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.' " *Brice v. Virginia Beach Correctional Center*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844)). Even if the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown v. Harris,* 240 F. 3d 383, 390 (4th Cir. 2001) (*citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998)) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

Deliberate indifference to a serious medical need "describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835; *see Grayson*, 195 F.3d at 695. "[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference". *Johnson v. Quinones* 145 F. 3d 164, 166 (4th Cir. 1998). Of course, if a risk is obvious, a prison official "cannot hide behind an excuse that he was unaware of a risk. . . ." *Brice,* 58 F.3d at 105. But, without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id*. at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge).

Although the Eighth Amendment proscribes deliberate indifference to a prisoner's serious medical needs, it does not require that a prisoner receive medical care by a provider of his choice. Moreover, the right to medical treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977). An inmate's mere disagreement with medical providers about the proper course of treatment does not support an Eighth Amendment cause of action. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Wester v. Jones*, 554 F.2d 1285 (4th Cir.1977); *Russell v. Sheffer,* 528 F.2d 318 (4th Cir. 1975). Moreover, prison officials are also entitled to rely on medical judgments and the expertise of prison physicians and other medical providers concerning the course of treatment deemed necessary for prisoners. *See Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995); *see also Miltier v. Beorn*, 896 F.2d 848, 854–55 (4th Cir. 1990) (stating that supervisory prison officials are entitled to rely on professional judgment of trained medical

personnel and may be found to have been deliberately indifferent by intentionally interfering with a prisoner's medical treatment ordered by such personnel).

Of import here, the doctrine of *respondeat superior* does not apply in §1983 claims. *See Monell v. N.Y. Dep't. of Soc. Serv.,* 436 U.S. 658, 691 (1978); *Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983); *Trulock v. Freeh*, 275 F. 3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a *Bivens* suit). Liability of supervisory officials "is not based on ordinary principles of *respondeat superior*, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001) (citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984)).

Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs. *See* ECF 1; ECF 39; ECF 39-1. However, in his Affidavit, ECF 39-1, Ravenell has not made any specific factual assertions as to Cole or her conduct. Rather, he contends that Sgt. Garrett and Nurse John Doe ignored his needs. *Id.* ¶ 9.

As noted, from 2007 to 2012, Cole was the Regional Director of the Maryland Eastern Division for Corizon. Cole's responsibilities were "purely administrative" and included ECI. ECF 35-2. Cole's region did not include oversight of the Jessup Correctional Institution or the Maryland Transition Center. *Id*. As Regional Director, Cole was not responsible for assessing, treating, or making treatment decisions regarding patient care, and she avers that she was unaware of the facts giving rise to plaintiff's complaint prior to the filing of his lawsuit. *Id.*

Ravenell's claims focus on the delivery of primary health care after his off-site surgical procedure. Crediting his version of events, he was not well cared for after the surgery. Notably, however, his Affidavit does not controvert Cole's assertions that she was not involved in Cole's care. Indeed, plaintiff has not cited any conduct by Cole.

Moreover, it is clear that plaintiff's claims against Corizon, a corporate entity, are also based on principles of *respondeat superior*. As discussed above, such a theory is insufficient to support an Eighth Amendment claim.

## Conclusion

Corizon and Cole are entitled to summary judgment in their favor. However, the complaint against Garnett and "Nurse P.A." shall be dismissed, *without prejudice*. A separate Order follows.

January 6, 2015                                      /s/  
Date                                           Ellen Lipton Hollander  
                                               United States District Judge